STEPHEN ZOKOYCH, Plaintiff-Appellant, *v.* BRUCE SPALDING *et al.*, Defendants-Appellees.

First District (5th Division)   No. 78-2034

Opinion filed May 16, 1980.

Defrees & Fiske, of Chicago (Edward J. Griffin and Jonathan M. Menn, of counsel), for appellant.

Jerome H. Torshen, Ltd., of Chicago, and Donovan & Roberts, of Wheaton, (Jerome H. Torshen and Abigail K. Spreyer, of counsel), for appellee West Suburban Bank of Lombard.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff appeals from a judgment for $19,745.50 in his favor for defendants' conversion of the assets of Ample Tool and Manufacturing Company, Inc. (Ample), a company engaged in the tool and die business. This judgment was entered on remand from this court, which reversed a prior finding denying plaintiff damages for the value of his half interest in Ample. On appeal, plaintiff contends that (1) the holding of a second trial to determine the value of Ample was error; (2) the judgment on remand was contrary to the law of the case; and (3) the judgment is against the manifest weight of the evidence.

In the prior appeal between the parties (*Zokoych v. Spalding* (1976), 36 Ill. App. 3d 654, 344 N.E.2d 805), this court found that the trial court's failure to award any damages for the value of plaintiff's half interest in Ample was against the manifest weight of the evidence.[1] The cause was remanded with directions to determine the actual value of Ample prior to

---

[1] Awards by the trial court of certain compensatory and punitive damages were affirmed.

the transfer of its assets and to award plaintiff damages equal to one-half of that value.

Two witnesses testified at the first trial as to the value of Ample. This court summarized the testimony of the first witness—Joseph McCauley, then president of a firm which manufactured and sold die sets and related accessories to the tool and die industry, as follows:

"[I]n July 1969, he had considered investing in Ample and had occasion to then study its business, including an inspection of its premises, financial reports, machinery, equipment, and the nature of work it did. At that time he concluded that the value of the machinery and equipment was about $200,000, not including perishable tools which he additionally valued between $20,000 and $25,000. * * *

McCauley further testified that he had bought two other companies which engaged in the general type of business as Ample. Prior to testifying, he examined the financial records of Ample as prepared by Schwartz for the period of July 1969 through April 1970. He stated that the balance and income statements indicated Ample lost $14,300 in 1968, which was a tough year for the industry in the Cook County area; $57,600 in 1969; and $66,710 for the first 4 months of 1970. The records for March 1970 showed a profit of $9,630 on sales of $46,600, and for April a profit of $6,098 on sales of $37,660. In the last 8 months of the 1970 fiscal year, ending February 28, 1970, the records showed a profit of $34,412 and a loss in excess of $30,000, which profit he considered just fantastic. * * * He stated that to determine an evaluation he customarily used a multiplier from 8 to 15 times earnings. In the case of Ample the earnings were in the vicinity of $53,000 a year. In his opinion, based primarily on its profit picture, the value of Ample of April 30, 1970, was in excess of $500,000, evaluated by the use of a multiplier of less than 10 times earnings." (36 Ill. App. 3d 654, 673-74, 344 N.E.2d 805, 820-21.)

The other witness who testified at the original trial as to the value of Ample was Jack Schwartz, former accountant for Ample. This court summarized his testimony, in part, as follows:

"In July 1969, he prepared a financial statement for Ample for the first 4 months of the fiscal year which began March 1, 1969, based upon the prior books and records. The statement as of June 30, 1969, reflected assets of $220,000, liabilities of $367,000, and a deficit capital of $147,000. In his opinion, the stock of Ample had a negative book value and the company was worthless. * * * There was a net operating profit in excess of $50,000 for the full 10-month

period in which Schwartz kept the books." 36 Ill. App. 3d 654, 674, 344 N.E.2d 805, 821.

On remand, both the judge in the original trial and the judge who ultimately heard the remand proceedings ruled over plaintiff's objection that the parties were entitled to present additional evidence as to the actual value of Ample prior to the transfer of its assets.

Dr. John Langum, an economist, testified on behalf of plaintiff that the value of stock represents the market value which would be paid in an arm's length transaction between a willing seller and a willing buyer, with both the buyer and the seller being adequately informed as to the nature of the business and financial position of the company; that when stock is not marketed as such, to determine its value one must look at the net income, present and prospective, in the light of the historical record of the company and then capitalize that by using an appropriate price multiplier; and that the multiplier, or price-earnings ratio, is derived from the actual appraisal of earnings of comparable companies that are in the same line of business, where market data is available. The witness stated that he reviewed the transcript in the original trial, the trial court's decree, this court's opinion, and Ample's tax returns for fiscal years ending February 28, 1962, through February 28, 1970; that he studied the tool and die business in the Chicago area and the United States; that he analyzed the price-earnings ratios for the leading industrial averages for companies engaged in manufacturing; that the 1970 price-earnings ratio of Standard and Poor's averages of the 400 industrial companies was 16.5, whereas the 1970 price-earnings ratio average for the Dow Jones industrials was 14.6; that the mean, modal and median price-earnings ratio as of June 1970 for all of the Standard and Poor's 92 industrial groups was about 12; that of the 32 companies using iron and steel engaged in metal work with businesses similar to that of Ample, the modal price-earnings ratio as of May 31, 1970, was 9 and the median was 11; and that the lowest price-earnings ratio among the 32 comparable companies was 7, and that ratio applied to only one of those firms. He further testified that the price-earnings ratio involved in the sale of the stock interest of Spalding to Zokoych in 1965 for the sale of Ample was 9; that the sales record from 1962 through 1970 for Ample demonstrated a strong and continued increase of demand for its products and was a very strong element in the financial position of the business; that based upon the data analyzed, he determined that the value of Ample immediately before the transfer of assets in May 1970 was $420,000; that this conclusion was reached by applying a multiplier of 7 times to the annualized rate of income of $60,000 based upon the company's income for the last 10 months of its operation; that he chose the smaller multiplier of 7 because Ample is a

small company and ordinarily has a somewhat greater risk; and that he used income figures for the last 10 months of the company's operation (July 1969 to April 1970) because (a) Spalding came back to the business in July 1969 and the net income earned after that represented the results of the full input in management by both plaintiff and Spalding and (b) in 1967 through 1969 there was a recession in many parts of the metal manufacturing and tool and die business, and there was a recovery from the recession during the period of July 1969 through April 1970. On cross-examination, Dr. Landum testified that although all of the 32 comparable companies analyzed were larger than Ample, they were comparable in business undertakings and product line; and that in calculating Ample's net worth, it is appropriate to include capital gain on the sale of equipment as it appears to be part of the business of Ample to occasionally sell depreciable property which it has held for more than six months.

Jerome Engerman, a certified public accountant, testified for defendant that he reviewed Ample's tax returns and financial statements; that in determining its fair market value, he could not find any earning power to include; that the February 28, 1970, tax returns reflected a $32,069 loss; that this loss included an extraordinary gain on the sale of equipment of $16, 325; that he added that gain back, thereby concluding that the corporation actually lost $48,394 for its operations in the fiscal year ending February 28, 1970; that the 1969 and 1968 tax returns reflected losses of $72,266 and $10,306 respectively; that the 1967 tax return showed a profit of $24,752; that the cumulative loss for those four years of operations was $106,714; that Ample's corporate statements for March and April of 1970 reflected income of $15,728 which, when analyzed without any adjustments, resulted in a profit of $94,368; that after deducting that projection from the cumulative loss of fiscal years 1967 through 1970, the five-year total net loss is $11,846—or an average loss per year of $2,569; that from these calculations, he concluded that Ample had no history from which an earnings evaluation could be made; that the company's earnings in the last 10 months were $34,460 which, when analyzed, resulted in a projected income of $41,352; and that as of April 30, 1970, the fair market value of Ample's assets was $39,491. On cross-examination, the witness testified that he had not read the transcript of the previous trial; that he gave no special weight to the 10-month period prior to the transfer of Ample's assets, but rather weighed all of the last five years of the company equally; that he would tend to discount situations which occurred in the prior years that are not likely to recur; that he did not attempt to determine any reason why Ample turned around in its performance after July 1, 1969; that additional depreciation and interest expense for newly purchased equipment increased from 1967

to 1969 by $6,000 and $7,000 respectively; and that payroll for labor had been declining since July 1969, and the higher payroll prior to July 1969 was not likely to recur.

Dr. Allen Drebin, chairman of the Department of Accounting and Information Systems at Northwestern University, testified for defendant that from his review of Ample's income statement based upon Federal income tax returns, it did not appear that the company had earning power since it experienced losses for its last three accounting years; that he was very skeptical about the prediction of earnings based on a 10-month period taken from two different fiscal years; that income Ample received from the sale of equipment and machinery could not be used in determining future earnings because it is an event which is not likely to recur; that since a price-earnings ratio is a ratio of the market price of a stock divided by its earnings per share, it cannot apply to Ample because it had a loss; and that his methodology in reaching the value of a manufacturing company is to determine the current market value of the assets, subtract the identified liabilities, and then add any intangible assets and going concern value. On cross-examination, in response to a hypothetical question, the witness testified that using his methodology a company having annual earnings of $60,000 and net assets valued at $47,392 would be valued at $433,000 (including net assets); that the price-earnings approach utilized by Dr. Langum is a commonly used method of analyzing stock in publicly held corporations and is a factor to consider in evaluating closely held corporations; that a turnaround situation takes place when companies which had a history of loss suddenly expect to become profitable; and that if the causes of a turnaround can be determined and would continue in the future, it is an important consideration in valuing the business.

The trial court found that plaintiff did not establish that Ample had any earning power as of May 28, 1970. In making this finding, it rejected plaintiff's approach in determining earning power based upon the 10 months immediately preceding May 28, 1970, and adopted "the usual and customary historical approach to determine earning power." It also rejected plaintiff's projections based upon a comparison of Ample with various other corporations on the basis that the companies were not comparable to Ample. The court then awarded plaintiff $19,745.50—an amount equal to one-half of what it determined to have been the value of Ample's assets. Plaintiff appeals from this judgment.

OPINION

Plaintiff first takes the position that we found in our prior opinion that the evidence in the original trial was sufficient to establish a value of his

half-ownership of Ample, and he argues this finding was binding on the trial court so that the admission of additional evidence as to value was improper.

Initially, we note that where the appellate court reverses a judgment, its findings are final upon all questions decided (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624; *Berry v. Lewis* (1963), 27 Ill. 2d 61, 187 N.E.2d 688), and the court to which the cause is remanded can take only such proceedings as conform to the judgment of the appellate court (*Schulenburg v. Signatrol, Inc.*; *Thomas v. Durchslag* (1951), 410 Ill. 363, 102 N.E.2d 114). However, where a reviewing court remands a cause with specific directions, they must be followed exactly (*Roggenbuck v. Breuhaus* (1928), 330 Ill. 294, 161 N.E. 780; *Pinelli v. Alpine Development Corp.* (1979), 70 Ill. App. 3d 980, 388 N.E.2d 943); but, if specific directions are not given, the trial court is required to examine the appellate court's opinion and determine therefrom what further proceedings would be proper and consistent with the opinion (*People ex rel. Callahan v. DeYoung* (1921), 298 Ill. 380, 131 N.E. 801; *Pinelli*) and, in this regard, it may allow the introduction of new evidence if consistent with the announced legal principles (*In re Estate of Maher* (1904), 210 Ill. 160, 71 N.E. 438; *Merrill v. Drazek* (1978), 58 Ill. App. 3d 455, 374 N.E.2d 792).

In the original proceeding here, the trial court found that Ample had no value at the time of the transfer of assets. This appears from its statements that:

> "The value of Ample Tool was not supported by the proof, the value under the proof here being nebulous. The company is now in bankruptcy.
>
> Proof of its business at the time of the transfer of the assets was not convincing to me beyond a zero or even minus net worth."

The trial court then found that "the evidence was not sufficient to establish a value for plaintiff's half-ownership of Ample." On appeal therefrom, we concluded that:

> "Plaintiff is entitled to recover for the loss of his one-half interest in Ample as a going business. Considering the totality of the evidence presented, the finding that Ample had no value prior to the transfer of its assets is contrary to the manifest weight of the evidence. Therefore, that portion of the decree which found that the evidence was not sufficient to establish a value for plaintiff's half ownership in Ample which thereby denied plaintiff additional damages therefor is reversed \* \* \*." (36 Ill. App. 3d 654, 675, 344 N.E.2d 805, 822.)

We then "remanded with directions to fix and determine the actual value of Ample prior to the transfer of its assets and to award plaintiff additional

damages against defendant for one-half of the value so determined not inconsistent with this opinion." 36 Ill. App. 3d 654, 679, 344 N.E.2d 804, 825.

It is clear that we considered the trial court's finding to be that Ample had no value at the time of the transfer and, in reversing "that portion of the decree which found that the evidence was not sufficient to establish a value," we held in effect that there was a sufficient showing of some value so that the trial court improperly found that Ample had no value, and while we remanded "with directions to fix and determine the actual value of Ample" we made no specific direction that in so doing the court was to rely exclusively on the evidence presented in the original trial. Accordingly, we reject plaintiff's contention that the trial court improperly admitted additional testimony as to the value of Ample.

Plaintiff also contends that even though the court properly heard additional evidence as to value, it failed to follow the law of the case as set forth in our prior opinion. Again, we disagree.

The questions of law decided in a previous appeal are binding on the trial court and on this court. (*Foreman v. Martin* (1975), 26 Ill. App. 3d 1028, 325 N.E.2d 378; *Boyer v. Atchison, Topeka & Santa Fe Ry. Co.* (1966), 70 Ill. App. 2d 214, 217 N.E.2d 303, *aff'd* (1967), 38 Ill. 2d 31, 230 N.E.2d 173, *cert. denied* (1968), 390 U.S. 949, 19 L. Ed. 2d 1140, 88 S. Ct. 1038.) However, the rule that a trial court is bound by the law of the case, as found by a court on appeal, is not applicable to issues of fact (*Power v. City of Chicago* (1955), 6 Ill. App. 2d 282, 127 N.E.2d 259 (abstract); *Rudin v. King-Richardson Co.* (1934), 276 Ill. App. 46), and matters concerning the merits of the controversy between the parties which were presented to but not decided by the appellate court can be relitigated on remand (*People v. Smith* (1979), 72 Ill. App. 3d 956, 390 N.E.2d 1356; *Foreman v. Martin*).

Here, the law of the case as found in the prior appeal is (1) our ruling as a matter of law in the prior appeal that Ample had some value prior to the transfer of its assets; (2) that plaintiff was entitled to some damages as the result of the loss of his one-half interest in Ample; and (3) that the method of determining the actual value of Ample was as set forth in our prior opinion. The trial court upon remandment applied that law of the case, as reflected by the fact that it permitted the introduction of testimony concerning the actual value of assets, the amount of liabilities, and earning power. In addition, the testimony in the original proceeding concerning these factors was referred to and relied upon by the witnesses at the hearing on remand. It is thus clear that the court generally followed this court's conclusions that the no-value finding was manifestly erroneous and that plaintiff was entitled to additional damages. This follows in that it did award damages to plaintiff in the amount of $19,745.50. The

propriety of the award is a question of fact which will be discussed subsequently in this opinion.

Plaintiff additionally argues, however, that the trial court ignored our findings in the prior appeal that the cause of Ample's losses prior to July 1969 was the expansion of its business just before a recession in the industry took place and that, after the recession ended and Spalding returned to supervise production, Ample's sales grew and its profits exceeded $50,000 for the last 10 months of its operation. We note that the determination of damages itself is an issue of fact (*Eckdahl v. Lease-A-Plane International Licensing Corp.* (1979), 69 Ill. App. 3d 864, 388 N.E.2d 62; *Anderson v. Gewecke* (1976), 36 Ill. App. 3d 170, 343 N.E.2d 673); thus, while the court's ruling as to the proper measure of damages can become the law of the case (*Kuhn v. Eppstein* (1909), 239 Ill. 555, 88 N.E. 174), the determination of the amount of damages cannot. The factors referred to by plaintiff constitute the evidence presented at the first trial, which the trial court upon remandment should have considered in its determination of damages. Because these factors do not define the measure of damages, but rather merely are items which should be taken into account, our reference to them is not the law of the case. In any event, as noted in our discussion of plaintiff's first contention, we did not determine the amount of damages owing plaintiff and, therefore, this issue was properly relitigated.

Plaintiff's third and final contention is that the finding as to damages is against the manifest weight of the evidence. We note that a trial court's determination as to damages will not be reversed unless palpably or manifestly contrary to the weight of the evidence. *Stewart v. D. J. Stewart & Co.* (1976), 37 Ill. App. 3d 848, 346 N.E.2d 475; *Flynn v. Zimmerman* (1960), 23 Ill. App. 2d 467, 163 N.E.2d 568.

As pointed out above, we found in the prior opinion that Ample had value at the time of the transfer of its assets and that "plaintiff is entitled to recover for the loss of its half interest in Ample as a going business," and we said:

> "To arrive at the actual value of plaintiff's half interest it is * * * necessary to take into consideration the actual value of Ample's assets, the amount of its liabilities and its earning power prior to the transfer of its assets and close of its business. It is necessary to determine those values from the actual amounts as to the value of its assets, liabilities and earning power, rather than the amounts carried on its books." (36 Ill. App. 3d 654, 674, 344 N.E.2d 805, 821.)

On remand, the trial court found plaintiff did not prove that Ample had any earning power on May 28, 1970, and that the value of Ample was the

net value of its assets—which was $39,491, of which plaintiff was entitled to half.

It is necessary to review the testimony here to ascertain whether the trial court correctly found that Ample had no earning power as of May 28, 1970. Plaintiff's witness, economist Dr. John Langum, testified that, in determining value, net income must be considered in light of the company's historical record and then capitalized by using an appropriate price-earnings ratio which is derived from the actual appraisal of earnings of comparable companies in the same business; that he analyzed the price-earnings ratios for the leading industrial averages for companies engaged in manufacturing, specifically focusing on the 32 companies conducting businesses similar to that of Ample; that the modal price-earnings ratio for those 32 companies was nine; that he reviewed the transcript in the original trial, the trial court's decree, this court's opinion, and Ample's tax returns for fiscal years ending February 28, 1962, through February 28, 1970; that he studied the tool and die industry in the United States; and that he chose a price-earnings ratio of seven to evaluate Ample, because it is a small company and thus has somewhat of a greater risk; that he applied the multiplier to the annualized rate of income of $60,000 (which was based on the company's income for the last 10 months of its operations) to conclude that Ample's value was $420,000; and that the 10-month period was used in his analysis because the tool and die industry recovered from the recession at that time.

A defendant's witness (Jerome Engerman) concluded that Ample had no history from which an earnings evaluation could be made, as there was a cumulative loss of fiscal years 1967 through 1970; that he gave no special weight to the 10 months prior to the transfer of Ample's assets, but, rather, he weighed all of the last five years of the company equally; that he discounted situations occurring in the prior years which are not likely to recur; that he did not attempt to determine why Ample turned around in its performance after July 1, 1969; that additional depreciation and interest expense for newly purchased equipment increased by $13,000 from 1967 to 1969; and that payroll for labor declined since July 1969 and was not likely to return to the higher levels experienced prior to that time. Another defendant's witness (Allen Drebin) was skeptical of using only 10 months to predict earning power and testified that, based upon its tax returns, Ample had no earning power as losses were experienced the last three accounting years. However, on cross-examination, he testified that applying his method of determining the value of a manufacturing company (current market value of assets less identified liabilities plus intangible assets and going concern value), a company having annualized earnings of $60,000 and net assets of $47,392

would be valued at $433,000 (including net assets); that a turnaround can be determined and, if there is evidence of such a change and evidence that it will continue, it is an important consideration in valuing the business.

All three of these witnesses believed that it is necessary to take into account any change in circumstance which explains a period of loss and justifies a conclusion of a turnaround. In our previous opinion, we indicated (and Langum so testified) that Ample's situation turned around following the industry-wide recession which ended July 1969. Langum also stated that Ample's sales continually increased afterward, and Engerman testified that Ample's previously high payroll expense which dropped after July 1969 would not recur. In the light of this change of circumstances, Langum valued Ample at $420,000, and Drebin valued it at $324,735 (excluding net assets). Therefore, we believe that the trial court's conclusion, that Ample had no value as a going concern, is contrary to the manifest weight of the evidence.

We consider defendant's arguments to the contrary are untenable, for a number of reasons. First, it argues that the use of the last 10 months to evaluate ignores the history of Ample. However, we note that Langum believed this was the most appropriate period for valuation since it represented the combined efforts of both plaintiff and Spalding and because the tool and die industry had recovered from the recession at that time, and Engerman and Drebin both testified that such a change of circumstances should be taken into consideration.

Secondly, defendant urges that Ample's management was unstable. Referring to Joseph McCauley's testimony at the original trial, that he was unwilling to invest because of such instability, defendant argues that this devaluates the worth of Ample. At the first trial, the following colloquy between McCauley and defense counsel took place during the cross-examination of this witness:

"Q. Then in * * * early June of 1970, Mr. McCauley, you testified that Mr. Spalding at that time asked you to buy him out for $125,000.00, is that correct?

A. That is correct.

Q. And at that time you testified that there—it was a fantastic company, wasn't it?

A. I testified in April it was a fantastic company.

Q. I see. Fine. You did not buy out Mr. Spalding?

A. I did not.
* * *

Q. Why didn't you put money into it and take it over, then, in July of 1970?

A. Number one, the company, had been moved; number two,

there was serious discord between the principals in the company; number three, at this point I did not know if I cared to be associated with Mr. Spalding."

Thus, it appears clear that the discord testified to was after the transfer of assets, and we directed the trial court in our prior opinion to determine the value of Ample as a going business prior to the transfer of its assets. Hence, the disharmony has no relevance to Ample's earning power during the time period with which we are concerned.

Thirdly, defendant maintains that Ample's prospects for the future were diminished because it laid off substantial portions of its work force. However, while it appears that the labor payroll had been declining since July 1969, the uncontradicted testimony of Dr. Langum establishes that from 1962 through 1970 Ample's sales record demonstrated a strong and continued increase of demand for its products. Thus, by reducing employee expense while increasing sales, Ample's financial position had in fact improved.

Fourth, defendant posits that the companies relied upon by Dr. Langum to establish a price-earnings ratio significantly differ from Ample in size, history, product line, investor interest, and all other relevant factors. We note, however, that defendant's witness Drebin agreed on cross-examination that Dr. Langum's method of valuation is commonly used; that Langum testified that the 32 companies used for his analysis were the most comparable of companies listed on national stock exchanges; and that the 32 companies were engaged in a business similar to that of Ample. Even assuming that those companies were not sufficiently comparable to Ample to establish a price earnings multiplier of 7, we nonetheless believe that the court's conclusion that Ample had no earning power was incorrect, because (1) Langum testified that the price-earnings multiplier involved in the sale of Spalding's interest in Ample to plaintiff in 1965 was 9; (2) McCauley testified at the original trial that, based upon his specific knowledge of the tool and die industry in Cook County and the price usually paid for those companies in relation to earnings, Ample was worth more than $500,000 (applying a multiplier of less than 10); and (3) Drebin, using an approach different from Langum's method of valuation, in response to a hypothetical question testified that the value of a company with the earnings of Ample and with net assets slightly higher than Ample would be valued at $433,000 (including net assets).

Finally, defendant appears to argue that Dr. Langum erroneously based his analysis upon Ample's net income of approximately $50,000 for the 10-month period prior to the transfer of its assets because included in that amount was $16,325 realized as a result of the sale of equipment, a gain not ordinarily realized in Ample's business. For purposes here,

however, it is unnecessary to determine whether this sale was ordinary or extraordinary since, in either event, Ample realized a profit during this period.

Having found that the trial court erroneously held that Ample had no earning power at the time of the transfer of its assets, we reverse the judgment and remand for a determination of damages consistent with the content of this and our prior opinion. In doing so, we note the problem resulting from the retirement of the first trial judge and the demise of the second, in that another judge cannot determine the credibilities of witnesses who have testified in those prior trials. Thus, absent a sufficient stipulation by the parties as to facts, it will be necessary to have a new trial as to damages.

Reversed and remanded, with directions.

MEJDA and WILSON, JJ., concur.