CASIMER PECYNA, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Intercraft Industries Corporation, Appellee).

First District (Industrial Commission Division)   No. 1—85—2935WC

Opinion filed October 29, 1986.

Mahendra R. Mehta, of Chicago, for appellant.

Kane, Doy & Harrington, Ltd., of Chicago (Arthur O. Kane, of counsel), for appellee.

JUSTICE BARRY delivered the opinion of the court:

The petitioner, Casimer Pecyna, claimed benefits under the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1977, ch. 48, par. 138.1 *et seq.*), for injury sustained while he was employed by the respondent, Intercraft Industries Corporation (the company). The arbitrator awarded the petitioner 80 weeks of compensation for his 16% bodily impairment. The Commission found that the petitioner's injuries rendered him wholly and permanently incapable of work and increased the award to compensation for life. The circuit court of Cook County confirmed the decision of the Commission. The Illinois Supreme Court reversed the judgment and remanded the cause to the Commission for further proceedings. On remand the Commission modified the award of attorney fees and affirmed the balance of the decision of the arbitrator. The circuit court of Cook County confirmed the

decision of the Commission. The petitioner brings the instant appeal.

The evidence at the arbitration hearing established the following. On February 16, 1978, while employed by the company as a local semitruck driver, the petitioner hooked up a trailer, kicked the block off its rear wheels, slipped on the company's icy dock, and landed on his buttocks. The petitioner continued to work but used a heating pad that evening. The next morning, despite stiffness in his buttocks, left shoulder and left wrist, the petitioner reported to work. The company sent him to the Corbett Clinic, where X rays revealed a severe left wrist sprain and a mild, left buttock contusion. The petitioner was subsequently treated with whirlpool and heat. When the petitioner returned to work three weeks later, numbness in his left leg hindered his ability to walk. The petitioner worked until June 16 or June 20, when he was admitted to the Gottlieb Hospital to treat the numbness in his left leg and buttocks and the pain in his back, buttocks and leg. During his 26-day stay, the petitioner underwent heat treatments and physical therapy for his condition, which was diagnosed as spondylolisthesis of L5-S1 with spondylolysis and some degenerative arthritic changes. Subsequently, for his persistent numbness and pain, the petitioner routinely saw Dr. Maxwell Corbett, who advised him to rest, exercise, and take pain medication.

In November of 1978, Dr. Corbett advised the petitioner to wear a back brace while his sciatic nerve continued to heal. In March of 1979, Dr. Henry Acuna released the petitioner to return to work in April. On April 26, 1979, the petitioner was able to perform his regular work duties for only four hours. The petitioner was hospitalized the next day for tests and physical therapy. In May of 1979, Dr. William Kane found no objective basis for the petitioner's complaints and released him to return to work. The following September the petitioner worked for five days, but had difficulty maintaining his former pace. Dr. Acuna advised him not to return to work.

In November of 1979, Dr. Marshall Matz recommended that the asymptomatic petitioner return to work. In December, when the petitioner returned to work part-time, he noticed that prolonged standing and walking caused severe pain in his buttocks that radiated into his left leg and toes. Dr. Audley Loughran related those symptoms to mild degenerative changes in the petitioner's lower lumbar spine; grade II spondylolisthesis at L5 with secondary degenerative changes at L5-S1; tenderness in his left buttock; mildly decreased lumbar spine motion; and numbness in the petitioner's toes and foot. Dr. Loughran prescribed a back brace and advised the petitioner to continue working.

Between November of 1979 and February 27, 1980, the petitioner worked approximately 24 days. The following May, Dr. Irwin Barnett diagnosed the petitioner's condition as low back injury with bilateral sciatic nerve root irritation; spondylolisthesis involving the 5th lumbar vertebra; defection in the interarticular region of the 5th lumbar vertebra; and flattening of the 5th lumbar disc space. Dr. Barnett opined that the petitioner had major loss of use of his left lower extremity and minor loss of industrial use of his right lower extremity.

In September of 1980, Dr. Corbett opined that the petitioner was capable of light work. At the time of the arbitration, the petitioner's condition had improved and he was receiving no medical treatment.

Arbitrator Angelo Caliendo awarded the petitioner 80 weeks of compensation for his 16% bodily impairment and, in addition, allowed Salvator Bongiorno attorney fees of 20% of the award. Both parties appealed to the Commission.

On review, the petitioner testified that since arbitration he had not returned to work and had undergone heat treatments for his persistent back pain and feet numbness. The January 12, 1983, report of Dr. Corbett, the only doctor the petitioner had consulted since arbitration, indicated that the petitioner was able to occasionally climb and lift up to 10 pounds but could not bend, stoop, or operate foot controls. The Commission adopted Dr. Corbett's findings; found that the accident permanently and totally disabled the petitioner; increased the award to lifetime compensation; and remanded the cause to the Commissioner to determine attorney fees. The circuit court orally reversed the Commission's attorney fees award but its written order confirmed the decision of the Commission. The company appealed to the Illinois Supreme Court.

The supreme court found that the petitioner was both capable of sedentary work and failed to prove total disability by not establishing the unavailability of a reasonably stable labor market for a person with his disability, *i.e.*, by neither proving his education or skills nor suggesting that he fell into an "odd lot" category. The court reversed the judgment and remanded the cause to the Industrial Commission "for further proceedings not inconsistent with this opinion."

On remand, after Commissioner Ted Black, Jr., allowed the petitioner's counsel to withdraw, the petitioner elected to proceed *pro se.* At the next hearing, the Commissioner stated that if the parties chose not to present additional evidence he would close proofs and set the cause for argument. The petitioner responded that he would close proofs unless he hired a good lawyer. After the Commissioner determined that no additional evidence would be presented, the petitioner

agreed that the Commission's decision would be based solely on the evidence already of record.

In its decision dated February 2, 1984, the Commission collectively awarded attorneys Salvator Bongiorno and Sharon Riley 20% of the petitioner's award. It found Sharon Riley entitled to $1,000 for expending 25 hours on the petitioner's case and permitted attorney Bongiorno fees of $2,547.12. In its May 14, 1984, decision, the Commission only addressed the nature and extent of the petitioner's permanent disability and attorney Riley's second amended petition for fees. The Commission reiterated its prior ruling on attorneys fees. It further found that the petitioner had failed to demonstrate the unavailability of a reasonably stable labor market for a person with his disability; introduced no evidence of his education or skills; and did not suggest that he fell into an "odd lot" category. Consequently, the Commission found that the petitioner was not totally disabled. Except for its ruling on attorney fees, the Commission affirmed the arbitrator's decision and reinstated the petitioner's award for 16% permanent disability.

In confirming the Commission's decision on remand, the circuit court found that the Commission's decision was not contrary to the manifest weight of the evidence, as the petitioner had failed to meet his burden of proof at arbitration and on review; that the petitioner's accrued rights from a subsequent condition of permanency had not been prejudiced; that the supreme court did not mandate a review hearing; and that the Commission was not compelled to hear additional evidence. The petitioner appeals from that decision.

Initially we address the company's argument that this appeal should be dismissed because the petitioner failed to attach copies of the decisions of the arbitrator and the Commission to his brief as required by Supreme Court Rule 342(a) (87 Ill. 2d R. 342(a)).

■ Supreme Court Rule 342(a) requires that in proceedings to review orders of the Industrial Commission the appellant attach to his brief copies of the judgment being appealed and the decisions of the arbitrator and the Commission. (87 Ill. 2d R. 342(a)). This court may summarily dismiss an appeal for failure to comply with Rule 342. However, absent aggravating circumstances, a harsh construction of the rule is to be avoided. (*Menicocci v. Archer National Bank* (1978), 67 Ill. App. 3d 388, 385 N.E.2d 63.) Hence, we decline to dismiss the appeal.

■ We next address the petitioner's argument that on remand the Commission both failed to comply with the mandate of the Illinois Supreme Court and deprived him of due process by not allowing him

to present additional evidence.

The company responds that in setting aside the award for total permanent disability, the Illinois Supreme Court directed the Commission to reevaluate the petitioner's compensable, residual disability but did not order the Commission to hear additional evidence. Therefore, the Commission had discretion to admit additional evidence, but none was presented.

In the petitioner's prior appeal, the Illinois Supreme Court reversed the judgment which confirmed the Commission's award of permanent total disability and remanded the cause to the Commission "for further proceedings not inconsistent with this opinion." The court found that the petitioner had failed to prove total disability because he could perform sedentary work and had failed to establish the unavailability of a reasonably stable labor market for a person with his disability, as he presented no evidence of his education or skills, and did not suggest that he fell into an "odd lot" category. On remand, the *pro se* petitioner presented no additional evidence and agreed to have the Commission base its decision on the record.

The mandate dictates the remanding court's authority to act. (*PSL Realty Co. v. Granite Investment Co.* (1981), 86 Ill. 2d 291, 427 N.E.2d 563.) Absent specific directions, the appellate court's opinion determines what further proceedings are proper and consistent with the opinion. *John Burns Construction Co. v. Interlake, Inc.* (1984), 125 Ill. App. 3d 26, 465 N.E.2d 639.

■ The mandate of the Illinois Supreme Court directed the Commission neither to hear new evidence nor to exclusively base its decision on the evidence of record. Instead, the supreme court struck down the award for total disability and directed the Commission to determine an appropriate award. We find that the Commission had discretion to hear additional evidence on remand. (See *Tee-Pak, Inc. v. Industrial Com.* (1986), 141 Ill. App. 3d 520, 490 N.E.2d 170.) The petitioner, however, presented no additional evidence and thus invited the Commission to reevaluate the record. Therefore, we find that the hearing on remand was in compliance with the supreme court mandate and that the circuit court erroneously ruled that the supreme court neither mandated nor obligated the Commission to hear additional evidence.

■ The petitioner next contends that he proved total disability and that his award was against the manifest weight of the evidence. Specifically, the petitioner suggests that the Commission erroneously presupposed that he did not fall into an "odd lot" category; determined that he failed to demonstrate a reasonably stable market for a

person with his disability; and faulted him for not introducing evidence of his education or skills. The company responds that an award for total permanent disability was unwarranted as a matter of law.

When an appellate court reverses a judgment, its findings are final as to all questions decided. (*Zokoych v. Spalding* (1980), 84 Ill. App. 3d 661, 405 N.E.2d 1220.) Therefore, the Commission appropriately adopted the following findings of the supreme court which indicated that the petitioner was not permanently disabled: that the petitioner was capable of sedentary work; and that he did not demonstrate a reasonably stable labor market for a person with his disability, *i.e.*, that he did not fall into an "odd lot" category and did not introduce evidence of his education or skills. We further find that on remand the Commission appropriately considered solely the nature and extent of the petitioner's permanent disability.

■ As to the propriety of the award, it is axiomatic that this court will not set aside the Industrial Commission's determination of extent of disability unless it is contrary to the manifest weight of the evidence. *Howard v. Industrial Com.* (1982), 89 Ill. 2d 428, 433 N.E.2d 657.

The Commission found that in June of 1978, X rays revealed spondylolisthesis at L5-S1 with spondylolysis and degenerative changes. Subsequently, Dr. Loughran also discovered residual neurological findings, such as numbness in the petitioner's foot. After the petitioner retired on February 27, 1980, Dr. Barnett found that the petitioner's back remained susceptible to injury as his lumbar back motions were restricted; his bilateral sciatic nerve root was irritated; and residuals of low back injury persisted. The January 12, 1981, report of the Corbett Clinic acknowledged the petitioner's restricted mobility and his sedentary, limited work capacity.

We find that the record amply supports the findings of the Commission. Consequently, its decision was not contrary to the manifest weight of the evidence.

■ The petitioner finally contends that the Commission erroneously awarded attorney fees. The arbitrator allowed attorney Bongiorno fees in the amount of 20% of the petitioner's original award. In its first review, the Commission remanded the cause to the Commissioner to determine attorney fees. While the petitioner's appeal was pending in the circuit court, attorney Riley petitioned to the Commission for fees. The circuit court orally reversed the Commission's ruling on attorney fees, but its written judgment simply confirmed the decision of the Commission. Neither party questioned attorney fees on appeal to the supreme court. Consequently, the

104

supreme court's decision did not address the issue.

The Commission's February 2, 1984, decision modified the arbitrator's decision by collectively awarding attorneys Bongiorno and Riley 20% of the award, allowing fees of $2,517.12 to Bongiorno and $1,000 to Riley. That award was incorporated into the Commission's decision of May 14, 1984, which is the basis for the instant appeal.

We find that in February of 1984 the Commission had authority to address the issue of attorney fees and that it incorporated its findings into the subsequent order from which the instant appeal was taken. The petitioner raised the issue in the circuit court and again on appeal to this court. We find, therefore, that the issue has been preserved for review. However, the record provides no basis to disturb the award.

Accordingly, the decision of the circuit court of Cook County is affirmed.

Affirmed.

WEBBER, P.J., and McNAMARA, LINDBERG and KASSERMAN, JJ., concur.