Glad-Nan Corporation, a Corporation, Plaintiff-Appellant, v. Henry's Drive-In, Inc., a Corporation, Defendant-Appellee (consolidated cause). Henry's Drive-In Inc., a Corporation, Plaintiff-Appellee, v. Glad-Nan Corporation, a Corporation, Defendant-Appellant.

Gen. No. 48,097.

First District, First Division.

March 6, 1961.

Hoffman & Davis, of Chicago, for appellant.

Samuel Allen, of Chicago (Harry G. Fins, of counsel) for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

Glad-Nan Corporation, lessee, brought suit against Henry's Drive-In, its lessor, for a judgment declaring that a notice by lessor to terminate the lease was ineffective. Lessor thereafter instituted a separate

forcible detainer action. The two suits were consolidated and lessee appeals from the order declaring the lease terminated and awarding possession of the premises to lessor.

On November 29, 1957, the parties executed two separate documents consisting of a franchise and a lease. Lessee was granted a franchise to operate a drive-in restaurant for a term of fifteen years at 5236–40 North Milwaukee Avenue, Chicago, under the name "Henry's Drive-In" or "Henrys". Lessee agreed to use lessor's labels, designs, and advertising matter, and to use and display the name "Henry's Drive-In" upon the premises; and to sell, use, distribute and purchase such products as designated by lessor. Among other things, the lease provided that:

> "Article III, Sec. 2) Lessee covenants and agrees that the lessee will use the demised premises for the operation of a "Henry's Drive-In" restaurant and sale of food and for no other purpose.
>
> . . .
>
> (Article XIII) Lessor and lessee agree that if for any reason the franchise of lessee to operate a Henry's Drive-In on the demised premises shall be terminated by the licensor, then this lease may also be terminated at the option of lessor as of the date of the termination of the franchise and any security deposited hereunder and not previously applied to any indebtedness due from lessee to lessor shall be refunded to lessee upon demand."

Lessee took possession on March 1, 1958, under the terms of the lease. On July 21, 1959, lessor, by letter, terminated the franchise. On September 18, 1959, lessee, by letter, assented to the cancellation of the franchise. Subsequently, on September 22, 1959,

lessor served lessee with an election to terminate the lease and a demand for possession.

Pending trial of the consolidated declaratory judgment and forcible detainer suits, the court entered an order directing lessee to pay to the clerk of the court $1500.00 monthly rental since the lessee claimed that the lease was still in effect, and in order to avoid default under the lease for failure to pay rental. The order allowed lessor to withdraw any such payments prior to a final determination; such withdrawals were to be deemed an acceptance by the lessor of rental payments under the lease, but the order was not to "constitute a determination by the court, or an admission by the defendant, that the said lease remains in force or effect; such determination to be effected upon the final hearing of this cause." Pursuant to this order, lessee deposited and lessor withdrew rental payments for the months of October and November, 1959. The trial court, after hearing evidence, entered judgment in favor of lessor for possession of the premises and denied lessee's request for a declaratory judgment.

Lessee contends that the termination of the lease could be effected by lessor only as of the date of termination of the franchise; that lessor by accepting payment of rental for August and September, 1959, waived any right to terminate the lease due to the termination of the franchise on July 21, 1959; that lessor's subsequent withdrawal of lessee's deposit of rents for October and November from the clerk of the court, under provisions of the court's order, constituted an acceptance of rental and waiver by lessor of its right to terminate the lease.

■ At the outset, lessor contends that this court has no jurisdiction to hear the present appeal. Lessor contends that the notice of appeal and bond were not filed within five days from the rendition of the

366

judgment as provided under Section 18 of the Forcible Entry and Detainer Act, Ill. Rev. Stat. 1959, Ch. 57, § 19, and that this requirement is jurisdictional. Lessor argues that the courts have interpreted such provisions to mean that the time for taking an appeal shall be computed by excluding the day on which the judgment is entered, and that since Glad-Nan Corporation filed its notice of appeal and bond on the day of the judgment, Glad-Nan has not come within the statutory requirements. This contention is without merit. The numerous cases cited in its support all deal with the contention that a litigant waited too long to take an appeal. We have found no cases in which such a provision has been held to determine when a judgment first becomes appealable, nor do we think such was its purpose. This provision is meant to limit the length of time which a litigant may wait before filing a notice of appeal and bond. We therefore hold that we have jurisdiction of the present appeal.

Lessee contends that the acceptance of rental after a breach or condition entitling lessor to terminate a lease is a waiver of the right to terminate for the breach or condition, citing Webster v. Nichols, 104 Ill. 160; Wohl v. Yelen, 22 Ill. App.2d 455, 161 N.E.2d 339; and Waukegan Times Theatre Corp. v. Conrad, 324 Ill. App. 622, 59 N.E.2d 308. These cases, as distinguished from our case, involve a covenant in a lease providing against assignment by the lessee without the written consent of the lessor. This clause was held to be waived by the subsequent inconsistent conduct of the lessor, particularly in knowingly accepting rents from the assignee. Waiver is a question of intent, and the acceptance of rent, even after a notice to quit has been given, is not itself a waiver, but merely evidence to be considered in connection with all the circumstances. Potter v. Henry Field Seed Co.,

367

32 N.W.2d 385 (Iowa); Brown v. Brown, 64 A.2d 506 (Pa. Super.).

 Whether lessor could terminate the lease under Article XIII, almost two months subsequent to its sending a notice of cancellation of the franchise, and whether its intervening acceptance of rental payments for August and September, 1959, waived any such right, are questions of the intention of the parties as shown by their dealings from July to September of that year. The lessor could waive its right to terminate the lease because of a franchise termination pursuant to Article XIII, but the lessee likewise could waive its right to insist that the lease be terminated as of the date of the franchise termination. Although the lease is, and must be, in writing, a waiver can be shown by the acts and conduct of the parties and need not be in writing. Welsh v. Jakstas, 401 Ill. 288, 82 N.E.2d 53. Thus, our courts have held that a party to a lease may orally waive a provision requiring a sixty day written notice of termination, Wolf v. Ladd, 220 Ill. App. 312, or a provision that an option to renew must be exercised by registered letter before a certain date. Fuchs v. Peterson, 232 Ill. App. 287, aff'd. 315 Ill. 370, 146 N. E. 556.

A review of the evidence reveals that shortly before lessor's termination of the franchise, lessor's president and its attorney met with lessee's attorney, at the latter's request, to discuss the differences between the parties. Lessor's attorney pointed out that if lessee persisted in its violation his client would have no alternative but to cancel the franchise, and informed lessee's attorney that there was a clause in the lease permitting its cancellation upon termination of the franchise. On July 23rd, two days after the notice of cancellation of the franchise was served on lessee, lessor's attorney said that he had called attorney for lessee and told him that lessee was "pur-

chasing mixes from an unapproved source" and that a notice of the franchise cancellation had been sent to lessee. He told lessee's attorney that his client was also in default of rent. Attorney for lessor testified, "To my recollection I told him that unless this matter was settled promptly that we would service a notice cancelling the lease." He further testified that lessee's attorney "asked me to hold things in abeyance until he could talk to [his client]." And further, "He called me the next day. . . . He told me that [his client] was getting his bank to refinance the conditional sales agreement . . . and he would call me as soon as bank financing was arranged." Lessee's attorney testified to several conversations he had with lessor's attorney in July. He related that the latter talked to him about the mix machine and "stated several requests which I was to relay to my client." He denied that he requested lessor's attorney to hold anything in abeyance.

During the month of August there were further conversations between the two attorneys. They talked about lessee's making bank arrangements. On August 13th lessor's attorney informed attorney for lessee that he had a new proposition which might interest his client and they discussed a guaranty to be signed by lessee. Lessee's attorney testified that he may have said that it was his understanding that his client would be in to see the lessor about executing a guaranty. He further testified, "I say I was not binding anyone. I didn't have any such authorization." He further testified that on August 29th he met with his client and lessor in his client's office. After a discussion he said that lessor drew up an agreement reciting what it would waive if the matter could be settled. This agreement was never executed. Lessor's attorney testified that he told attorney for lessee on September 14th, that lessor "felt they had waited

369

long enough," that lessee owed September rent, and that they would take action immediately to cancel the lease, and that lessee's attorney asked him to hold up cancellation. The attorney for lessee admitted that lessor's attorney told him his client was tired of waiting and that he wanted some action on the lease, but he denied that he asked the latter to hold in abeyance any of his legal rights. In the afternoon of the same day, lessee's attorney told attorney for lessor the rent would be paid that day. The latter testified that lessee's attorney told him that his client would sign the guaranty and that he would prepare a memorandum as to what his client wanted with reference to his franchise. Lessee's attorney countered, stating that he did not recall saying that his client would sign the indemnity and wanted a letter of understanding of the differences. After several more conversations lessor received a letter on September 18th reciting in part: "The undersigned, as President of the Glad-Nan Corporation, hereby formally acknowledges and accepts your notice of July 21, 1959, that you have, as of said date, terminated our franchise to operate a Henry's Drive-In. . . ." Subsequently, on September 22, 1959, lessor served lessee with a demand for possession and election to terminate the lease.

The evidence is in conflict in some respects; particularly in regard to whether lessee's attorney requested attorney for lessor to hold matters in abeyance during their negotiations. It was within the province of the trial judge to believe the latter's testimony. Mortell v. Beckman, 16 Ill.2d 209, 157 N.E.2d 63. It is certainly consistent with the rest of the transactions between the parties.

We are of the opinion that the acts and conduct of the lessee in its negotiations with lessor

370

kept the franchise termination in abeyance until lessee, by its letter of September 18th, terminated the negotiations. Lessee cannot induce its lessor to defer cancelling the lease by entering into negotiations with them and then complain that the lease was not cancelled promptly enough. In Springfield Marine Bank v. Marbold, 264 Ill. App. 446, the court said, "Where one has been induced to act or refrain from action by the course of conduct of another, so that he will be substantially injured if such other be allowed to repudiate such course of conduct, an estoppel arises." See also, Adam v. Columbian Nat. Life Ins. Co., 218 Ill. App. 54; Hawley v. Florsheim, 44 Ill. App. 320; Hadden v. United States, 130 F. Supp. 610 (Ct. Cl.). In 415 Fifth Avenue Co. v. Finn, 146 F.2d 592 (C. C. A. 2), a lessee had gone into receivership and its lease provided that the lessor could terminate the lease in that eventuality. Negotiations for a new lease were entered into and ten months after the receivership proceedings were filed the lessor exercised its option to terminate. In answer to lessee's argument that the lessor had waited too long to exercise its option, the court stated that it had been exercised within a reasonable time due to the fact that the parties had been negotiating during the intervening period.

The October and November rental payments were made under a court order which we hold negates any inference of waiver. The order was entered on lessor's petition and after they had refused a tender of the October rental to avoid just such a claim. Such arrangements are often made in suits concerning the validity of leases and they are particularly practical where, as here, the lessor must continue to meet periodic payments under its lease. See Esch v. Leitheiser, 69 N.E.2d 760 (Ind. App.).

371

For the reasons given we hold that Henry's Drive-In effectively terminated its lease with Glad-Nan Corporation, pursuant to Article XIII of the lease, by its written notice dated September 22, 1959. The Circuit Court judgment is therefore affirmed.

Affirmed.

KILEY, P. J. and MURPHY, J. concur.