JUSTINE REALTY COMPANY, Plaintiff-Appellant, *v.* AMERICAN CAN COMPANY *et al.*, Defendants-Appellees.

First District (1st Division)   No. 83—0670

Opinion filed November 14, 1983.

Lord, Bissell & Brook, of Chicago (C. Joseph Yast, Sharon Jones, and Hugh C. Griffin, of counsel), for appellant.

Winston & Strawn, of Chicago (Neil E. Holmen and Timothy J. Rooney, of counsel), for appellee American Can Company.

Conklin and Adler, Ltd., of Rolling Meadows (James T. Crotty and Scott W. Hoyne, of counsel), for appellees Central National Bank and General Warehouse and Transportation Company, Inc.

Sachnoff, Weaver & Rubenstein, Ltd., of Chicago (William P. Colson and Ellis B. Rosenzweig, of counsel), for appellee P.M. Foods, Inc.

JUSTICE GOLDBERG delivered the opinion of the court:

Justine Realty (plaintiff) brought this forcible entry and detainer action based upon alleged breaches of a lease by the defendants. Defendants are American Can Company, the current tenant (lessee), and several subtenants: P.M. Foods and Central National Bank, as trustee, subtenants of American Can; General Warehouse and Transportation Company, subtenant of Central National Bank; and Good Humor Corporation, subtenant of P.M. Foods. P.M. Foods was also a subtenant of General Warehouse. At the close of plaintiff's case, in a bench trial, the trial court entered judgment for defendants. Ill. Rev. Stat. 1981, ch. 110, par. 2—1110.

A lease between corporate predecessors of plaintiff and American Can was entered into in 1960. By assignment, American Can became lessee of the entire premises in 1967. The premises consist of a one-story, 270,000 square foot commercial and industrial building.

A defendant may move for a finding or judgment in his favor at the close of plaintiff's case-in-chief. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1110.) In ruling upon this motion, the trial court must consider all of the evidence presented, including any favorable to the defendant, pass on the credibility of the witnesses, draw reasonable inferences from the testimony, and generally consider the weight and quality of the evidence. *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154, 407 N.E.2d 43.

On appeal, the decision of the trial judge should not be reversed unless it is contrary to the manifest weight of the evidence. 81 Ill. 2d 151, 154; *Stender v. National Boulevard Bank* (1983), 114 Ill. App. 3d

1041, 1046, 449 N.E.2d 873.

Proceeding with these rules in mind, we will address the two separate factual and legal problems here. First is the matter of alleged structural changes in the premises. Second is the issue of various allegedly unauthorized subleases.

I

As regards the matter of alleged structural alterations, during American Can's tenancy, certain physical changes were made on the premises. A 200-foot interior wall was constructed to subdivide the space in the east half of the building. This was not a load-bearing wall.

In addition to four truck docks in the south wall, the premises originally had six truck docks at the north end of the east wall. With the installation of the interior dividing wall, it became necessary to install five truck docks in the east wall just south of the dividing wall. Two more truck docks were later installed in the west half of the south wall. The trial court found and concluded that the changes were not "structural alterations" requiring prior written consent of the lessor.

Plaintiff's argument is based upon the assumption that the above physical changes of the premises constituted "structural alterations." Yet, plaintiff cites no Illinois case which has squarely addressed the issue of what constitutes a "structural alteration" in the instant context. Plaintiff relies upon cases which establish that a general covenant in a lease requiring the tenant to keep the premises in repair binds him only to make those ordinary repairs reasonably required to keep the premises in proper condition but does not require him to make repairs involving structural changes. See, e.g., *Hardy v. Montgomery Ward & Co.* (1971), 131 Ill. App. 2d 1038, 267 N.E.2d 748.

However, the question of responsibility to pay for repairs is not at issue in the case at bar. The lease expressly provides that "[l]essee shall *** at its sole cost and expense, make all necessary repairs and alterations, whether structural or otherwise ***." The issue here is whether the installations of the non-load-bearing, interior dividing wall and the additional truck docks were alterations so major as to be deemed "structural."

A "structural alteration" has been defined to be "[o]ne that affects a vital and substantial portion of a thing; that changes its characteristic appearance, the fundamental purpose of its erection, and the uses contemplated [and] *** is extraordinary in scope and effect, or unusual in expenditure." (Black's Law Dictionary 1276 (5th ed.

1979).) The trial court used this definition in analyzing the physical changes alleged to be "structural alterations" made without prior written consent.

Our supreme court has implicitly approved the use of such a definition of the term "structural alteration." In *Klumpp v. Rhoads* (1936), 362 Ill. 412, 415, 200 N.E. 153, changes including the installation of a cement floor and the alteration of windows and doors were held to be "minor changes *** not contemplated by the legal definition of structural alterations." Although the opinion did not set out the legal definition referred to, it cited *Plaza Amusement Co. v. Rothenberg* (1930), 159 Miss. 800, 838, 131 So. 350, 357, which sets out a definition of the term "structural alteration" which is substantially the same as the dictionary definition quoted above.

The trial court in the instant case found that the purpose of the dividing wall and the additional truck docks was to make the building more useful to the occupants throughout the 20-year term of the lease, and that the premises could be restored so as to comply with the lease provision requiring return of the premises in substantially the same condition as leased. The dividing wall was non-load-bearing, and the additional truck docks were similar to the original truck docks. The trial court thus concluded that the changes did not affect a vital and substantial portion of the premises, or change the characteristic appearance or fundamental purpose of the building.

■ The lease contemplated occupancy by commercial tenants and subtenants whose varied operations could well be expected to require physical changes to the premises to maintain production efficiency. We conclude as a matter of law that the changes in question should not be classified as "structural alterations." Accordingly, the judgment of the trial court in this regard is affirmed.

## II

As regards the sublease, in August of 1970, American Can sought plaintiff's prior written consent to a sublease to Wayco Foods. Because plaintiff found that the proposed subtenant had "already started moving in" and had "made changes to the floor," plaintiff responded that consent would be granted only if American Can relinquished its option to purchase the premises. American Can agreed. The sublease began September 15, 1970. Plaintiff forwarded its written consent on December 1, 1970. The trial court found that plaintiff ignored its right to declare a forfeiture for American Can's failure to submit this sublease for prior written consent, because plaintiff "found it unnecessary to enforce its requirement for prior consent in

1970 when the sublease to Wayco Foods was submitted to it."

In 1977, American Can sought plaintiff's prior written consent to a proposed sublease to M & T Chemicals, Inc., a wholly owned subsidiary of American Can of which American Can was planning to divest itself. Since M & T Chemicals would thus be an independent entity, occupancy by it would no longer be covered by the Wayco Foods sublease. Plaintiff indicated its consent by signing and returning the letter requesting consent. The trial court found that plaintiff deemed it unnecessary to enforce its requirement for prior consent "when the M & T sublease was submitted to it in 1971."

In 1978, P.M. Foods replaced Wayco Foods as a sublessee. Plaintiff admits that, while it was aware of the occupancy by P.M., it did not insist on compliance with the requirement of prior written consent. Plaintiff continued to accept rent. However, plaintiff relies upon a clause in the lease (paragraph 10) which provides that a waiver of any particular breach of the lease does not waive plaintiff's right to declare a forfeiture for subsequent breaches.

Four additional subleases, of which plaintiff was apparently unaware, followed. In 1978, P.M. Foods sublet a portion of its space to Good Humor Corporation. No prior written consent or subsequent approval was ever sought.

In 1980, American Can sublet a portion of the premises to Central National Bank, as trustee. Following plaintiff's inspection tour of the premises, during March 1982, American Can sought plaintiff's approval of this sublease. Plaintiff declined.

In December of 1980, Central National Bank sublet its space to General Warehouse and Transportation Company. Approval of this sublease was not sought by American Can until after inspection of the premises by plaintiff in 1982. Plaintiff declined to grant approval.

In 1981, General Warehouse sublet a portion of its space to P.M. Foods. Again, approval was sought after plaintiff's March 1982, discovery of P.M. Foods' subtenancy, but was not granted.

On March 29, 1982, following the discovery of these unauthorized subleases to Good Humor Corporation, Central National Bank, General Warehouse and P.M. Foods, plaintiff made demand for a written explanation from American Can. American Can was given until April 16, 1982, to explain why "these serious breaches of the lease" should be overlooked. American Can responded on April 14, 1982, by requesting approval for these four most recent subleases. Plaintiff served notice of termination of the lease on May 26, 1982.

The trial court found that plaintiff had failed to enforce the prior written consent requirement regarding the Wayco Foods, M & T

Chemicals and P.M. Foods subleases, and had failed to take immediate action to terminate the lease following its March 1982, discovery of unauthorized subleases. Based upon these findings, the trial court concluded that plaintiff had waived the prior written consent requirement of the lease. In addition, the trial court concluded: "If the actions of the parties reflect the intent with respect to [the prior written consent requirement], the actions may also be determinants as to the intent with respect to a modification of Paragraph 10 [of the lease] relating to subsequent causes of forfeiture." The trial court accordingly entered judgment in favor of defendants at the close of plaintiff's case.

On the contrary, plaintiff argues that even if these were one or more waivers of the right to declare a forfeiture for failure to obtain prior written consent to a sublease, the right to declare a forfeiture for subsequent unauthorized sublettings remained unaffected. This argument is based upon paragraph 10 of the lease which provides:

"No waiver of any forfeiture, by acceptance of rent or otherwise, shall waive any subsequent cause of forfeiture or breach of any condition of this lease, nor shall any consent by Lessor to any assignment or subletting of said premises, or any part thereof, be held to waive or release Lessee from direct and primary liability on any of the foregoing covenants, agreements or conditions; and every assignee or sublessee shall be expressly subject thereto."

The parties do not cite, and our research has not discovered, any Illinois case which has squarely addressed the issue of whether, and under what circumstances, such a provision in a lease is to be given effect. Defendants, in arguing that the provision requiring prior written consent, in effect, was permanently and completely waived, place reliance upon cases which demonstrate that lease provisions may be waived as to particular breaches by conduct amounting to an estoppel. See, e.g., *Doerr v. Maher* (1949), 337 Ill. App. 245, 85 N.E.2d 363; *Waukegan Times Theatre Corp. v. Conrad* (1945), 324 Ill. App. 622, 59 N.E.2d 308; *Peacock v. Feltman* (1927), 243 Ill. App. 236, *appeal denied.*

These cases are inapposite for at least two reasons. First, in the case at bar we have no issue of estoppel. There is no evidence that defendants relied to their detriment upon plaintiff's words or conduct concerning prior written consent to any sublease. (See *Gary-Wheaton Bank v. Burt* (1982), 104 Ill. App. 3d 767, 776, 433 N.E.2d 315.) On the contrary, the record reveals numerous communications between the parties after the initial P.M. Foods sublease which evidence a com-

plete understanding on defendants' part that the consent requirement remained firmly in effect.

Second, the clauses involved in the above cases all attempted to allow the lessor to take action amounting to a waiver of a particular default, but then to terminate the lease for the very same default. None involved a clause like paragraph 10 of the instant lease above quoted, which strongly provides that forgiveness by the lessor of one breach will not excuse future breaches. In addition, as this court has stated, in *Barnard v. Hollingsworth* (1948), 336 Ill. App. 228, 232, 83 N.E.2d 372, were this court to sustain the contention that a waiver of a particular breach constitutes a waiver of the related lease provision,

> "it would mean that once a tenant had breached a provision in a lease without penalty, there [would be] nothing the lessor [could] ever do to enforce that provision. The effect would be to nullify the plain wording of the lease and to place the lessor at the mercy of a tenant who flouts the provisions of the lease."

The decision of this court in *McKinney v. Mulvey Manufacturing Co.* (1910), 157 Ill. App. 339, involved a provision similar to paragraph 10 of the instant lease, and provides some guidance which is directly applicable. In *McKinney*, the defendant in a forcible detainer action argued that the plaintiff lessor, by accepting past-due rent payments, had waived his right to declare a forfeiture for breach of a lease provision requiring timely payment of rent.

The lease in *McKinney* contained two important clauses. The first provided that no demand for rent or notice to the lessee would be necessary before declaration of a forfeiture for late payment of rent. The second provided that the acceptance of rent, " 'or any other act of apparent affirmance of the tenancy [would not] operate as a waiver of the right to forfeit this lease *** for the term still unexpired for any breach of any of the covenants herein.' " (157 Ill. App. 339, 342.) The court concluded that, in view of these provisions, it was (157 Ill. App. 339, 343):

> "unable to perceive how the failure of plaintiff to take advantage of previous defaults on the part of the defendant, can constitute in law a waiver of the provisions of the lease, and establish a new contract between the parties ***."

To the same effect is *Merritt v. Kay* (D.C. Cir. 1924), 295 F. 973. There, the lessee argued that the lessor, by continuing to accept rent following the discovery of two unauthorized subleases, had waived a lease provision prohibiting subleases. The court concluded (295 F. 973, 976):

> "If the lessee had simply convenanted not to sublet, those

waivers might well be regarded as working a waiver of all subsequent breaches of the condition, and as entirely freeing the tenant from the obligation not to sublet. No such effect, however, can be given to the waivers mentioned, in view of the fact that the lessee, not only stipulated that she would not sublet, but expressly agreed that *no waiver of any breach of that covenant of the lease should be construed as a waiver of the covenant itself or of any subsequent breach thereof..*" (Emphasis added.)

The similar lease provision in the instant case must necessarily be given effect. The 1967 "Assignment of Lease Agreement" by which American Can became the sole lessee of the premises expressly states that the tenancy of American Can is subject to the terms of the original lease which include paragraph 10 above quoted.

In oral argument, defendants directed our attention to the time frame in which plaintiff demanded an explanation from American Can on March 29, 1982; American Can responded on April 14, 1982; and plaintiff's notice of termination of the lease was sent May 26, 1982. We cannot possibly construe these facts as sufficient to create a waiver.

In *Glad-Nan Corp. v. Henry's Drive-In, Inc.* (1961), 29 Ill. App. 2d 363, 173 N.E.2d 521, *appeal denied* (1961), 21 Ill. 2d 621, during the month of July 1959, the lessor terminated a franchise held by the tenant. However, the lessor did not terminate the lease until September. During that time the parties attempted an amicable adjustment. Following the breakdown of negotiations in mid-September, the lessor terminated the lease. The court expressly held the lessor's right to terminate the lease had not been waived, and noted that the intervening period of negotiations rendered the exercise of the right to terminate timely. 29 Ill. App. 2d 363, 371.

In the instant case, plaintiff attempted to avoid a forfeiture of the lease. Plaintiff expressly gave American Can an opportunity to work the situation out during a period of approximately two weeks. American Can took advantage of this opportunity and responded on April 14, 1982. Rather than provide any explanation for its failure to comply with the prior written consent requirements, however, American Can simply sought approval of the subleases. Plaintiff served notice of termination on May 26, 1982, slightly more than one month later. During this period apparently plaintiff heard nothing further from American Can. As in *Glad-Nan*, we can draw no waiver of this lease from these facts.

We are fully cognizant of the fact that the law does not favor a

forfeiture. In fact equity "abhors" a forfeiture. However, it is our legal duty at this particular time to effectuate the plain language of the lease. We do so secure in the knowledge that defendants will be given a full opportunity to proceed with their portion of the case.

■ Accordingly, we conclude that the trial court erred in finding a waiver of the lease provision requiring prior written consent to any subleases. We reach this conclusion as a matter of law and as a result of the binding covenants contained in the lease. We do conclude that defendants should necessarily be given an opportunity to proceed with the introduction of evidence.

We therefore affirm the trial court's judgment in favor of defendants insofar as it is based upon plaintiff's failure to demonstrate that the physical changes made on the premises constituted "structural alterations" requiring prior written consent. We also reverse the judgment insofar as it is based upon a finding of a waiver of the lease provision concerning the right to sublet. We remand the cause to the circuit court with directions to proceed as though defendants' motion had been denied by the trial court or waived. See 87 Ill. 2d R. 366(b)(3)(iii).

Affirmed in part, reversed in part and remanded.

BUCKLEY, P.J., and CAMPBELL, J., concur.