MILES BLACK, Plaintiff-Appellant, v. PEORIA MARINE CONSTRUCTION COMPANY, INC., *et al.,* Defendants-Appellees.

Third District No. 3—86—0700

Opinion filed September 16, 1987.

Richard L. Steagall, of Nicoara & Steagall, of Peoria (John P. Nicoara, of counsel), for appellant.

Robert Dewey, of Heyl, Royster, Voelker & Allen, of Peoria, (Stephen J. Heine, of counsel), for appellees.

JUSTICE WOMBACHER delivered the opinion of the court:

Plaintiff, Miles Black, brought this action to recover for injuries he allegedly received during a loading operation at Peoria Barge Terminal, Inc. (Peoria Barge). Plaintiff was injured when a piece of equipment fell off a forklift which he was directing. Plaintiff's second amended complaint, which contained seven counts, named a bridge

subcontractor, Peoria Marine Construction, Inc. (Peoria Marine), and a trucking company, N. E. Finch Company. (N. E. Finch), as defendants. The trial court dismissed counts I and III of the amended complaint, which were premised on the Structural Work Act (the Act) (Ill. Rev. Stat. 1985, ch. 48, par. 60, *et seq.*); and count VII, which alleged a cause of action for common law negligence against Peoria Marine directly. The case was tried on plaintiff's negligence claim against the trucking company and on plaintiff's negligence claim against Peoria Marine on a vicarious liability theory. The jury returned a general verdict in favor of both defendants. In answers to special interrogatories, the jury found that the operator of the forklift involved in the loading operation was loaned by the trucking company, N. E. Finch, to the employer of the plaintiff, Peoria Barge, and that N. E. Finch was the agent of the bridge subcontractor, Peoria Marine, at the time of the occurrence.

Plaintiff presents six issues for review: (1) whether the trial court properly dismissed counts I and III of plaintiff's amended complaint for failure to state a cause of action under the Structural Work Act; (2) whether count VII stated a cause of action for common law negligence against defendant Peoria Marine Construction, Inc.; (3) whether the trial court properly instructed the jury; (4) whether the jury's findings on the special interrogatories were consistent; (5) whether the jury's verdict on the issue of Gary Finch's status and the issue of Gary Finch's negligence was against the manifest weight of the evidence; and (6) whether the trial court erred in excluding the evidence of thermography.

Plaintiff was working as a longshoreman-laborer for Peoria Barge when he was injured on June 25, 1982, during a loading operation. The loading operation involved lifting a large power unit of an earth augur from its place of storage onto a flatbed trailer for transportation to a jobsite several miles away. The earth auger was going to be used by Peoria Marine in the construction of an overpass bridge.

Richard Gresham, Peoria Marine's bridge site superintendent, testified that no one from Peoria Marine was involved in the loading operation of the power unit which took place at Peoria Barge's storage facility.

The plaintiff was acting as the signalman for the forklift operator during the loading operation. The forklift was owned by Peoria Barge. Gary Finch, the forklift operator, was an operating engineer regularly employed by the N. E. Finch Company. Gary Finch was leased from N. E. Finch to Peoria Barge on June 25, 1982, to perform the loading operation at Peoria Barge Terminal because Peoria

Barge's own operating engineers were busy operating other equipment. While working at Peoria Barge, Gary Finch reported to Mark Burlingame, the supervisor at Peoria Barge. Burlingame had the right to tell Gary Finch what functions to perform, when to perform different activities and for how long. He also had the authority to fire Gary Finch from his job.

After Gary Finch picked up the power unit with the forklift, plaintiff directed Finch to the flatbed trailer. As Finch approached the trailer, plaintiff was standing in front of the forklift in order to signal Finch when to stop. When Finch raised the forks to load the power unit onto the truck, the power unit on the forks started to tip. Plaintiff became tangled in the forks as he tried to get away. The power unit fell off the forks, hit the ground, and then rolled over onto the plaintiff.

Plaintiff first argues that the trial court erred in dismissing counts I and III of his complaint for failure to state a cause of action under the Structural Work Act. In count I of the amended complaint plaintiff alleged a cause of action under the Structural Work Act against Peoria Marine. In count III of the amended complaint plaintiff alleged a cause of action under the Structural Work Act against Peoria Marine under a vicarious liability theory and alleged that N. E. Finch was the agent of Peoria Marine.

Plaintiff argues that the off-site loading of the power unit in this case is an activity covered under the Structural Work Act. Plaintiff contends that the Illinois Supreme Court considered this exact issue in *McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 317 N.E.2d 573, finding that unloading operations which occur away from the actual construction site are activities which are covered by the Structural Work Act. Plaintiff also claims that the forklift is a "mechanical contrivance" within the meaning of the Act and that he was injured as a result of the failure of the forklift.

Section 1 of the Act provides in pertinent part:

> "[A]ll scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon ***." Ill. Rev. Stat. 1985, ch. 48, par. 60.

■ The elements which must be pleaded and proved in an action brought under the Structural Work Act are: (1) the plaintiff was engaged in or was passing under or by a structural activity; (2) the activity was being performed with reference to a structure; (3) a scaffold or other mechanical contrivance was being used; (4) a defect existed in the construction or use of the scaffold or other mechanical device; (5) the defect proximately caused the plaintiff's injury; (6) the defendants had charge of the work being performed; and (7) the defendants willfully violated the Act's safety standards. *Kochan v. Commonwealth Edison Co.* (1984), 123 Ill. App. 3d 844, 463 N.E.2d 921.

■ In the case at bar, we find that the plaintiff was not engaged in an activity covered by the Structural Work Act. First, the plaintiff was not engaged in the erection, alteration, repair, painting, or other structural activity under the Act. Second, the plaintiff was not performing work upon a "house, building, bridge, viaduct or other structure," which is necessary to come within the scope of the Act. Moveable equipment such as the power unit of the earth augur, the fork lift, and the truck at issue here are not "structures" under the Act. (See *Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 328 N.E.2d 318.) We conclude that the trial court did not err in dismissing counts I and III of plaintiff's complaint for failure to state a cause of action under the Structural Work Act.

Plaintiff's reliance on *McNellis v. Combustion Engineering, Inc.,* is misplaced. In *McNellis,* the decedent was involved in unloading component parts of a steam generating unit, which were to become part of the structure itself. The area where the component parts were stored was situated about one-half mile from the actual building site. When the materials were needed they would be reloaded on railroad cars or trucks for transportation to the power station. The decedent in *McNellis* was attempting to loosen a retaining plate on a railroad car when one of the component parts fell, pinning him to the side of the car. The supreme court, in affirming the appellate court, agreed with their finding that the power generating facility in that case was a unique structure and that the circumstances of its construction, as well as the size and nature of some of its components, dictated that unloading be performed some distance from the actual building. In addition, the supreme court noted that the definition of the work premises in the construction contract included the actual construction site as well as " 'all places contiguous thereto and in the vicinity thereof where materials would be kept or stored.' " *McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 150, 317 N.E.2d 573, 575.

 █ Plaintiff next argues that the trial court erred in dismissing count VII of plaintiff's complaint, which alleged common law negligence against defendant, Peoria Marine. Count VII of the complaint alleged that Peoria Marine, as lessee of the equipment being transported at the time of plaintiff's injuries, was negligent in failing to properly select equipment and direct the manner in which the loading operation in which plaintiff was injured was conducted. Plaintiff alleged that Peoria Marine had the right to control and select the manner and means of transporting construction equipment, the right to control and to select the work performed by the plaintiff and the right to control the manner in which the loading operation was to be performed.

When considering a motion to dismiss, pleadings are to be strictly construed against the pleader because Illinois requires fact pleading. (*Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96.) In order to establish a cause of action sounding in negligence, a plaintiff must allege facts from which the law raises a duty. (*Bescor, Inc. v. Chicago Title & Trust Co.* (1983), 113 Ill. App. 3d 65, 446 N.E.2d 1209.) A complaint which alleges that a defendant was negligent in certain respects, but which omits supporting factual averments, fails to state a cause of action because a complaint must contain facts and not merely conclusions. *Gray v. City of Plano* (1986), 141 Ill. App. 3d 575, 490 N.E.2d 1020.

 A review of count VII of plaintiff's amended complaint reveals that plaintiff failed to allege facts to support the existence of any duty which arose as a result of any contractual relationship between Peoria Marine and N. E. Finch or Peoria Barge, the employer of the plaintiff. There is no allegation of fact to support the claim that Peoria Marine, which had no employees at the loading site, had the right to control the loading operation or the means of transporting the construction equipment. We find that plaintiff's complaint contains only conclusory allegations concerning the right of Peoria Marine to control the manner of performance of the work by N. E. Finch in loading the Peoria Marine equipment. Therefore, we find that the trial court properly dismissed count VII of plaintiff's amended complaint.

 Plaintiff next argues that the trial court committed reversible error in its instructions to the jury. Plaintiff argues that the only instruction making reference to general agency principles was defendants' instruction No. 5., modified No. 50.10 of Illinois Pattern Jury Instructions (Illinois Pattern Jury Instructions, Civil No. 50.10 (2d ed.1971)) (hereinafter IPI Civil 2d). Plaintiff argues that the jury was

not instructed that general agency principles were to be applied in resolving the loaned servant defense because the trial court refused to tender plaintiff's additional instructions on this issue.

A particular jury instruction given by a trial court is justified if it is supported by some evidence in the record, and the trial court has discretion in deciding which issues are raised by the evidence. (*Ralston v. Plogger* (1985), 132 Ill. App. 3d 90, 476 N.E.2d 1378.) The proper inquiry is whether the instructions as a whole were sufficiently clear so as to not mislead the jury and to fairly and correctly state the law. *Lundberg v. Church Farm, Inc.* (1986), 151 Ill. App. 3d 452, 502 N.E.2d 806.

■ In this case, there were two different agency issues to be determined by the jury: (1) whether an agency relationship existed between Peoria Marine and N. E. Finch; and (2) whether Gary Finch was acting within the scope of his employment with N. E. Finch or was a loaned employee from N. E. Finch to Peoria Barge. The court gave a series of instructions dealing with the relationships between Peoria Marine, N. E. Finch, Gary Finch, and Peoria Barge Terminal. In addition to defendants' No. 5 (modified IPI Civil 2d No. 50.11), the trial court also gave other instructions relating to general agency principles including: (1) plaintiff's instruction No. 16A (modified IPI Civil 2d No. 50.11), which explained that the defendants were corporations which could only act through their agents or employees and an act or omission by an employee or agent within their scope of authority was the act or omission of the defendant corporations; (2) plaintiff's instruction No. 32 (modified IPI Civil 2d No. 50.10), which explained the difference between the terms "agent" and "employee"; (3) and the trial court's instruction No. 1 (modified IPI Civil 2d No. 50.10), which explained the issues concerning the relationship between Gary Finch and N. E. Finch. We find that the instructions when taken as a whole adequately apprised the jury of the issues involved and the applicable law.

Plaintiff next argues that the trial court's instruction No. 1 improperly stated the test for determining a loaned employee's status by omitting the word "wholly" from its reference to the fact that a loaned employee is subject to the control and direction of the second employer. We have already determined that the jury instructions as a whole accurately and fairly stated the law; therefore, we do not find that the omission of the word "wholly" materially affected the jury's consideration of this issue. Even without the word "wholly," the instruction adequately explained that the loaned employee must be subject to the control and direction of the employer to whom he is

loaned.

■ Plaintiff also argues that the trial court erred in giving defendants' issues instruction No. 11b, which omitted plaintiff's claims of negligence against N. E. Finch. It is error to give instructions where there is no evidence on which to base the instructions. (*Jeffers v. Weinger* (1985), 132 Ill. App. 3d 877, 477 N.E.2d 1270.) We find that the trial court did not err in giving defendants' issues instruction No. 11b because there was no evidence in the record to support plaintiff's allegations of independent acts of negligence on the part of N. E. Finch.

■ Plaintiff contends that the special interrogatory concerning Gary Finch's status was misleading and did not properly set forth the elements of the loaned servant defense. A special interrogatory is proper when it relates to one of the ultimate facts upon which the rights of the parties directly depend. (*Eichorn v. Olson* (1975), 32 Ill. App. 3d 587, 335 N.E.2d 774.) After a review of the special interrogatory, defendants' No. 20A, we conclude that it was sufficiently related to the issue of Gary Finch's status in connection with the loaned servant defense, given that the jury was adequately instructed on all the issues concerning the relationship between Gary Finch, N. E. Finch and Peoria Barge.

■ Plaintiff argues next that the jury's findings on the special interrogatories were inconsistent. The jury found that N. E. Finch was acting as an agent within the scope of its authority for Peoria Marine at the time of the occurrence, but found that Gary Finch was not an employee of N. E. Finch acting within the scope of his employment at the time of the occurrence. Plaintiff argues that the evidence was undisputed that Gary Finch was the only N. E. Finch employee involved in the forklift operation. Therefore, according to plaintiff, since the jury found that Peoria Marine had the right to control N. E. Finch at the time of the occurrence, N. E. Finch must have had a right to control Gary Finch because that was the only connection N. E. Finch had with the forklift operation.

Contrary to plaintiff's claim, the record indicates that Ben Greider, a truck driver for N. E. Finch, was present at the time of the occurrence. Greider was an employee of N. E. Finch at the time of the occurrence. It was his job to drive the truck to the jobsite for Peoria Marine after the equipment was loaded. Therefore, the finding of an agency relationship between Peoria Marine and N. E. Finch was proper given these facts in the record. We conclude that the jury's findings on the special interrogatories were consistent.

■ Plaintiff next argues that the evidence adduced at trial

does not support the jury's verdict. Whether a loaned employee relationship exists is a question of fact for the jury, especially where conflicting inferences may be drawn from the evidence. (*Mosley v. Northwestern Steel & Wire* (1979), 76 Ill. App. 3d 710, 394 N.E.2d 1230.) A jury's determinations will be set aside by a court of review only when it is satisfied that they were occasioned by passion or prejudice or found to be unwarranted by the manifest weight of the evidence. (*Wright v. Yellow Cab Co.* (1983), 116 Ill. App. 3d 242, 451 N.E.2d 1313.) After a careful review of the record, we find that the jury's verdict was not against the manifest weight of the evidence. We need not address the last issue raised by the plaintiff concerning the admissibility of thermography since it is unrelated to the liability issues addressed herein.

Accordingly, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BARRY, P.J., and HEIPLE, J., concur.