VULCAN MATERIALS COMPANY, Plaintiff-Appellant, v. NORMAN HOLZHAUER *et al.*, Defendants-Appellees.

Fourth District No. 4—92—0018

Opinion filed August 13, 1992.—Rehearing denied October 6, 1992.

446

LUND, J., dissenting.

Fellheimer, Travers & Engelman, Ltd., of Pontiac (Robert M. Travers and David J. Babb, Jr., of counsel), for appellant.

Strong, Blakeman & Schrock, Ltd., of Pontiac (Kenneth L. Strong, of counsel), for appellees.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On May 8, 1985, plaintiff Vulcan Materials Company (Vulcan) filed suit in the circuit court of Livingston County against defendants Norman and Janice Holzhauer seeking a declaratory judgment that a lease of realty for a quarrying operation was still in force. Defendants are the lessors and plaintiff is the assignee of the lessee, Pontiac Stone Company (Pontiac). The pleadings indicated defendants had notified plaintiff that the lease was terminated because of plaintiff's breach by failure to work the premises when doing so would have been economically feasible thus constituting an abandonment of the premises within the meaning of the lease. Plaintiff contended that it had not committed such an abandonment and even if it had, defendants had waived any abandonment by accepting royalty payments.

Both sides moved for summary judgment, contending the matters furnished in support of their motions showed they were entitled to judgment as a matter of law. On February 6, 1987, the circuit court entered a summary judgment in favor of plaintiff, deciding the lease was in full force and effect and denying defendants' requested relief. Defendants appealed to this court. We held that questions of fact existed and reversed and remanded for further proceedings. *Vulcan Ma-*

*terials Co. v. Holzhauer* (1987), 161 Ill. App. 3d 1164 (unpublished order under Supreme Court Rule 23).

On December 15, 1988, after remand, defendants filed a counter-complaint in forcible entry and detainer (Ill. Rev. Stat. 1987, ch. 110, par. 9—101 *et seq.*), accompanied by a request that both the declaratory judgment proceedings and the countercomplaint be tried before a jury. Plaintiff objected to having either action submitted to a jury. The circuit court ruled that the entire proceedings would be presented to a jury but that the jury's verdict in the declaratory judgment action would be merely advisory. The case was tried in this way. On September 23, 1991, the circuit court entered judgment in favor of defendants (1) accepting an advisory verdict for defendants in the declaratory judgment action, and (2) on the verdict for defendants on the countercomplaint in forcible entry and detainer.

Plaintiff has appealed requesting a new trial and contending (1) the use of an advisory jury as to the declaratory judgment claim was improper; (2) the court erred in ruling on instructions; (3) the judgments entered were contrary to the manifest weight of the evidence; and (4) arguments and conduct of defense counsel required the circuit court to grant a mistrial. Plaintiff merely requests a new trial and does not contend that judgment should be entered in its favor. The issues concerning the use of a jury and the instruction of the jury are closely related. However, we hold that the court did not err in the use of the jury but did commit error requiring reversal in ruling on instructions and requests for interrogatories. We consider other issues raised only to the extent that they concern matters which may occur again on retrial. We reverse and remand for a new trial.

Most of the underlying facts are undisputed. On June 4, 1969, defendants and Pontiac entered into a lease agreement authorizing Pontiac to quarry limestone, sand, gravel, and crushed rock from defendants' premises in Livingston County paying 12 cents per ton or 8% of the selling price, whichever was greater, for the quarried substance removed. The agreement also provided for quarterly minimum royalties to be paid regardless of the amount of substance removed. During the years in question here, which were all after the lease had been assigned to plaintiff, these minimum royalties were $5,000 per quarter payable on the first days of April, July, October, and December. In addition, the lessee agreed to pay rental of $200 per acre for certain land occupied by a processing plant and $200 per acre for land not excavated but staked out for planned excavation and thus unavailable for farming.

The terms of the lease provided it extended until December 31, 2005, but would terminate earlier if all the various listed substances had been completely removed. If such substance remained on December 31, 2005, the lessees were granted an option to extend the lease for an additional 10-year period. Pontiac actively mined the northeast corner of the property until 1974, but no mining had taken place thereafter. Vulcan had not mined the property, although it did mine adjacent property which it owned. Nevertheless, from 1974 until March 21, 1985, defendants received a total of $188,000 in advance royalties.

Each section of the lease was given a separate number except that sections 3, 3(a.), 3(b.), 3(c.), and 3(d.) were set forth as separate sections. As far as this litigation is concerned, sections 3 and 3(d.) are the most significant portions of the lease. Section 3 states:

"Lessee shall enter upon said premises and proceed to mine and quarry the sand, gravel and/or limestone therein contained in a good and economical manner so as to take out the greatest amount of sand, gravel or limestone for agricultural purposes or for road purposes with due regard to the development and preservation of the same as a workable quarry. Lessee shall work and mine said premises as aforesaid as steadily and continuously as the market for sand, gravel, crushed rock and/or limestone, and the weather, will permit."

Section 3(d.) provides:

"If, after the actual commencement of quarrying operations on the property, Lessee shall abandon said premises for one year, all rights which Lessee has acquired under this agreement shall, at the option of Owner [defendants], cease. However, the obligation of royalty payments and of required minimum annual and acreage payments and rentals and restoration of ground, etc., herein provided shall still be borne by Lessee to and including the final date of declared abandonment."

Defendants maintained at trial and now maintain on appeal that conditions in recent years have been such that excavating sand, gravel, rock, and limestone was economically feasible and that the failure of plaintiff to do so constituted a violation of paragraph 3 of the lease and an abandonment of the premises within the meaning of paragraph 3(d.) of the lease. Defendants assert they effectively terminated the lease on March 20, 1985, by sending plaintiff a letter declaring the lease had been abandoned for more than one year by the failure of plaintiff to quarry the minerals described in the lease. Plaintiff maintains (1) its failure to excavate did not amount to an abandon-

ment of the premises because it had continued to drain the premises and taken other steps in furtherance of subsequent mining of the sand, gravel, rock, and limestone; and (2) any abandonment by plaintiff was waived by defendants in various ways including acceptance of royalties by defendants after giving notice of termination.

Evidence indicated that in March 1984, plaintiff notified defendants it intended to mine the leased property that year, and a meeting took place on April 11, 1984, at which a mining plan was discussed. At that meeting, Norman Holzhauer stated "I don't care if you [plaintiff] ever quarry the property." He contended he meant that if plaintiff did not want to quarry, others would. Plaintiff's agents who were present testified they understood the statement to mean that defendants did not care if the property was quarried as long as the minimum royalties were paid. Plaintiff relies upon this statement as evidence of waiver by defendants of any requirement that plaintiff work the property to keep the lease alive. Evidence was also presented of other activities of plaintiff in 1983 and 1984 which gave some indication of preparation to quarry.

Originally, plaintiff contended that the submission of the forcible entry and detainer claim to the jury was error. In its reply brief, plaintiff now concedes that under the decision in *Twin-City Inn, Inc. v. Hahne Enterprises, Inc.* (1967), 37 Ill. 2d 133, 225 N.E.2d 630, submission of that portion of the case to the jury was proper. There, an action was brought by a lessor against a lessee seeking possession of realty and unpaid rent. The lessee and its surety were denied a trial by jury, and the court found for the plaintiff. On appeal, the supreme court set aside the judgment and remanded for a new trial.

At the time of *Twin-City Inn, Inc.*, section 11a of the Forcible Entry and Detainer Act (Act) stated that "[i]n any case relating to premises used for residence purposes, either party may demand trial by jury, notwithstanding any waiver of jury trial contained in any lease or contract." (See Ill. Rev. Stat. 1965, ch. 57, par. 11a.) The defendants in that case contended this language indicated that no right of trial by jury existed in forcible entry and detainer actions unless residential property was involved. The supreme court disagreed, holding the language of section 11a of the Act merely negated jury waivers in cases where residential property was involved. The court further held that the history of forcible entry and detainer actions indicated that all parties had a statutory right to trial by jury in such a case and, at least when claims for rent are involved, the right to trial by jury is constitutional. Language similar to that of former section 11a of the Act now appears in section 9—108 of the Act (see Ill. Rev.

Stat. 1987, ch. 110, par. 9—108), which currently provides for suits in forcible entry and detainer.

■ Thus, plaintiff's complaint concerning the use of a jury is limited to the use of an advisory jury on the claim for the issuance of a declaratory judgment. Section 2—1111 of the Code of Civil Procedure (Code) states:

> "Juries in cases seeking equitable relief. The court may in its discretion direct an issue or issues to be tried by a jury, whenever it is judged necessary in any action seeking equitable relief." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1111.)

Plaintiff cites no case which holds that error resulted from use of an advisory jury. Rather it contends that an appropriate procedure would be for such a jury to answer special interrogatories involving factual issues. In support of this proposition, plaintiff refers to *Ross v. Bernhard* (1970), 396 U.S. 531, 538, 24 L. Ed. 2d 729, 736, 90 S. Ct. 733, 738, where the United States Supreme Court indicated that the complexity of issues involved and whether legal or factual issues predominate bear upon whether a constitutional right to trial by jury exists in a given case.

We find no precedent indicating the use of an advisory jury here was error, and we find the court committed no error in doing so. We do note, however, that the submission of the forcible entry and detainer action to a jury while, at the same time, the declaratory judgment action was decided by the court, albeit with an advisory jury, did create a problem of possible inconsistency in decision. (See *Power Electric Contractors, Inc. v. Maywood-Proviso State Bank* (1978), 60 Ill. App. 3d 685, 691, 377 N.E.2d 142, 146 (equity court's imposition and foreclosure of mechanic's lien *res judicata*, and barred jury trial on counterclaim for damages).) Both claims were based upon the question of whether plaintiff's lease had been terminated. (*Cf. Aetna Screw Products Co. v. Borg* (1983), 116 Ill. App. 3d 206, 214, 451 N.E.2d 1260, 1266 (legal and equitable issues not identical).) Inconsistency was avoided when the court finding adopting the advisory verdict was consistent with the jury verdict in the forcible entry and detainer action. Nevertheless, the complexity of the situation involved bears upon the effect which we give to errors in instructing the jury.

One claim of error in regard to ruling on instructions arises from the giving, over plaintiff's objection, of an instruction tendered by defendants, which stated:

> "You are instructed as a matter of law that acceptance by Holzhauers of the advanced royalties made by Vulcan and its

predecessor did not waive the right of Holzhauers to exercise their option to terminate the agreement in March, 1985."

Evidence was presented at trial that on November 27, 1984, defendants had sent notice to plaintiff that the lease was terminated because of abandonment of the lease by plaintiff for a period of at least one year, all as provided by section 3(d) of the lease. The evidence also showed that, thereafter, on December 26, 1984, defendants had accepted a $5,000 quarterly minimum royalty advancement. The foregoing instruction which was given prohibited the jury from considering defendants' acceptance of the $5,000 advancement in regard to plaintiff's assertion that defendants waived any abandonment of the lease by plaintiff which occurred prior to acceptance of the money.

 Acceptance of rent by a landlord after knowledge of the existence of a breach of the lease by a tenant has been held to constitute a waiver of a right to forfeit a lease (*Steven W. Barrick & Associates v. Witz* (1986), 147 Ill. App. 3d 615, 498 N.E.2d 738), or, at least, competent evidence of waiver (*Glad-Nan Corp. v. Henry's Drive-In, Inc.* (1961), 29 Ill. App. 2d 363, 367, 173 N.E.2d 521, 523). Accordingly, as plaintiff had pleaded waiver by defendants of any right to forfeiture for abandonment, the jury should not have been prevented from considering the $5,000 payment.

 Defendants point out that in our order deciding the prior appeal, we stated:

"We hold that the acceptance of the advance royalty by defendants in December 1984 did not waive the right to exercise their option to terminate in March of 1985." (*Vulcan Materials Co.*, 161 Ill. App. 3d 1164 (slip op. at 5) (unpublished order under Supreme Court Rule 23).)

Defendants maintain that under the doctrine of "the law of the case," that language became binding on the circuit court after remand, and that doctrine required the giving of the instruction. Under the "law of the case" rule, determinations of law made by the appellate court are binding on remand to the circuit court and on a subsequent appeal to the appellate court unless a decision of a higher court changes the law (*Relph v. Board of Education of DePue Unit School District No. 103* (1981), 84 Ill. 2d 436, 443-44, 420 N.E.2d 147, 150), but determinations concerning issues of fact are not (*Zokoych v. Spalding* (1980), 84 Ill. App. 3d 661, 667, 405 N.E.2d 1220, 1226). Thus, the question of whether the language in our prior opinion could have properly guided the jury on remand depends partly upon whether the evidence involved was the same after remandment.

■ The evidence after remandment was not the same as that presented for rulings upon the motions for summary judgments. Previously, no evidence was presented concerning any notice of termination given by defendants to plaintiff on November 27, 1984, nor was there any evidence of any notice of termination served on plaintiff prior to defendants' December 29, 1984, acceptance of the $5,000 advance by cashing the check. At the time of the summary judgment proceedings, the only notice of termination shown in the evidence was a notice given by defendants to plaintiff in March 1985. As we pointed out in our Rule 23 order deciding the prior appeal, by the provisions of paragraph 16 of the lease, the advance royalties were stated to be held in trust by defendants to recover royalties that might become due. Receipt by defendants of advance royalties at a time when no termination had been declared was entirely consistent with subsequent termination by defendants, because upon subsequent termination, they would be entitled to some of the royalty advanced and would hold the balance of the advancement to be returned to the plaintiff.

The circuit court erred in giving the instruction prohibiting consideration of defendants' receipt of advance royalties in December 1984.

■ Plaintiff's assertion that the circuit court erred in refusing to submit to the jury certain interrogatories concerns its tendered interrogatories Nos. 2 and 3. No. 2 asks "[d]id Holzhauers waive their right to declare their property abandoned by Vulcan?" and No. 3 asks "[a]re Holzhauers estopped from declaring an abandonment of their property by Vulcan?" Section 2—1108 of the Code states: "[t]he jury may be required by the court, and must be required on request of any party, to find specially upon any material question or questions of fact submitted to the jury in writing" (Ill. Rev. Stat. 1989, ch. 110, par. 2—1108). The phrase a "material question or questions of fact" has been interpreted to mean an ultimate fact or facts upon which the rights of the parties depend. (*Packard v. Kennedy* (1955), 4 Ill. App. 2d 177, 186, 124 N.E.2d 55, 60.) Refusal to submit a proper interrogatory is usually reversible error. *Moyers v. Chicago & Eastern Illinois R.R. Co.* (1963), 43 Ill. App. 2d 316, 317-18, 193 N.E.2d 604, 606.

■ Proper interrogatories which require an answer to ultimate facts which, if answered in a certain way, would decide the case include those concerning (1) whether a party at the time of an occurrence was a guest or a passenger (*Leonard v. Stone* (1942), 381 Ill. 343, 45 N.E.2d 620); (2) whether a party acted with wilful or wanton misconduct (*Jones v. Phillips* (1953), 349 Ill. App. 393, 110 N.E.2d 758 (abstract of opinion)); (3) agency or scope of employment (*Black v.*

*Peoria Marine Construction Co.* (1987), 160 Ill. App. 3d 357, 513 N.E.2d 622); or (4) whether a defendant's car struck the plaintiff (*Chavez v. Watts* (1987), 161 Ill. App. 3d 664, 515 N.E.2d 146).

Defendants maintain the interrogatories were properly denied because (1) insufficient evidence of waiver or estoppel was presented; (2) the interrogatories were vague and indefinite; (3) answers to the interrogatories in the negative would not control the general verdict; (4) the interrogatories assume the existence of an abandonment; (5) the time frame during which an estoppel could occur was not defined; and (6) a finding of waiver or estoppel would be against the manifest weight of the evidence.

■ We conclude that the interrogatories should have been given. They were not vague. We have already indicated that the evidence was sufficient to raise an issue as to waiver. Much the same evidence supports the theory of estoppel. Any assumption in the interrogatories that the property had, in fact, been abandoned by plaintiff was not prejudicial to defendants. The fact that an answer can be given to an interrogatory which is not determinative as to the case does not make the interrogatory bad when, as here, an answer can be given which is dispositive of the case. Such was the situation in all cases we have cited to explain the issue upon which interrogatories should be submitted. Here, an answer finding defendants had waived their right to terminate the lease or were estopped from terminating the lease would have been determinative of the case. The circuit court committed error in denying the submission of the two interrogatories.

Citing the decision of this court in *Carroll v. Hurst* (1982), 103 Ill. App. 3d 984, 431 N.E.2d 1344, defendants contend that error in instructing the jury is insignificant because the verdict of the jury was only advisory in the declaratory judgment action, and the court's order in that action should control. There, this court affirmed a circuit court order dismissing for want of equity a complaint for an injunction against the operation of a junk and salvage yard. The court had submitted the issue to an advisory jury. Apparently, the losing party asserted that error had occurred in the failure of the court to instruct the jury, but this court concluded that contention was not significant because the court would not have been bound by the jury's determination. That case did not involve the situation here where two actions were tried together, both having the same central issue, with one action submitted fully to a jury and the jury serving only in an advisory capacity in the other action.

■ The situation here differs from that in *Carroll*. Plaintiff filed an action for a declaratory judgment. That action would determine

whether the lease had been terminated. Defendants responded with a cross-complaint in forcible entry and detainer. The question of whether the lease was terminated was also at the heart of that action but, in addition, a writ of possession could be ordered if defendants recovered on that claim. Defendants demanded and received a jury trial on that claim. We have determined that the jury was improperly instructed. Under these circumstances, we cannot fairly hold that error was harmless, because, in the combined action, the court was not required to follow the verdict of the improperly instructed advisory jury in one of the two actions. Defendants now deem insignificant the action in forcible entry and detainer and the jury verdict thereon which they requested. Moreover, the refusal to give proper interrogatories caused a prejudice to plaintiff greater than an improper instruction to an advisory jury, because it deprived plaintiff of an important check upon the accuracy of the verdict. We hold that the error in granting the instruction in question and denying the interrogatories was not harmless and constituted reversible error.

Several instructions given concern the interpretation of the lease. We are reluctant to pass upon the propriety of these instructions because the law in this State is uncertain on the subject. Illinois pattern jury instructions for civil cases have never covered this subject. A noted authority describes the determination of the extent to which a jury is involved in the interpretation of a contract in these words:

"Whether we describe this matter as a question of fact or a question of law, it is necessary to find some test for determining whether it is for the judge to determine rather than for the jury. As in the case of all other matters of fact, we can here lay down the rule that if the evidence is so clear that no reasonable man would determine the issue before the court in any way but one, the court will itself determine the issue, either by directing the verdict or by dispensing with any verdict whatever. By this statement, however, we do not say that if no reasonable man would have used the words with any but one meaning, that meaning will be adopted by the court without aid from the jury. The person whose meaning is in issue may have been a very unreasonable man; such men make contracts. The court must indeed state the issue; it must determine the person or persons whose meaning shall be held to prevail. What that meaning was, though a question of fact, may be made so clear by the evidence that a jury's verdict to the contrary would be set aside." (3 A. Corbin, Contracts §554, at 222-23 (1960).)

The parties here seem to agree that interpretation of the word "abandon" in the lease was an issue for the jury.

In *Houck v. Martin* (1980), 82 Ill. App. 3d 205, 213, 402 N.E.2d 421, 428, this court held that words with ordinary meanings need not be defined but, under the circumstances, reversible error did not result from an instruction defining the word "loan." Here, no instruction was necessary, under the evidence, to define the word "abandon." We caution, however, that the ruling might be different if evidence is introduced as to a technical meaning applied to leases of real estate for excavating purposes. The court here gave an instruction concerning the rules to use in construing contract language. In drafting such an instruction, great care must be taken to limit the construction which the jury is to make to that portion of the contract which is to be construed. See *Schneider v. Neubert* (1923), 308 Ill. 40, 139 N.E. 84; *Vulcan Corp. v. Cobden Machine Works* (1949), 336 Ill. App. 394, 400, 84 N.E.2d 173, 176.

As the plaintiff requests only a new trial, and that has been granted, we need not discuss its claim as to the sufficiency of the proof, which may well be different on retrial. To the extent, if any, that substance exists as to plaintiff's contentions of defendants' counsel's improper actions, we are confident the problem will not arise on retrial.

We deem it appropriate to mention that because this complicated case has been before us twice and many uncertainties exist as to the legal principles involved, a strong attempt to reach compromise before retrial appears to be very much in the best interests of all involved.

As we have indicated, we reverse the judgment entered and remand for a new trial.

Reversed and remanded.

COOK, J., concurs.

JUSTICE LUND, dissenting:

After vacillating over construction of the lease, I have come to the conclusion that we are mistaken in determining that "abandonment" was a question of fact. The lease charged the lessee with removing and selling "the greatest amount of sand, gravel or limestone." The property was to be worked "as steadily and continuously as the market *** will permit." The lease was executed on June 4, 1969, and the working and mining then commenced, but stopped in

1974. In March 1984, there was notice of intention to mine in that year, but no mining occurred.

Section 3(d.) of the lease gave only the owners the option of declaring abandonment, after there had been abandonment for one year. On November 27, 1984, the owners notified lessees of termination of the lease, and abandonment was listed as the reason for termination.

By considering the lease as a whole, it is apparent that while quarterly "advances" were made, the anticipated income was to be on a royalty basis. The greater the production, the higher the income to the owners. While a minimum was provided on a quarterly basis, the owners were not required to indefinitely accept the minimum payment and could, if there was abandonment, at their option, terminate the lease.

What is abandonment under a lease of this type? I suggest it is directly connected with the work process which provides the maximum potential income, i.e., the royalty income. If there is no attempt to remove sand, gravel, and limestone for a period over one year then, absent a lack of a market, abandonment should occur.

Was there an absence of a market? This operation was shut down, except for maintenance and draining, for 11 years, during which time lessees were mining an adjoining acreage. A market must have existed to justify the mining on this adjoining acreage.

The abandonment occurred, in my opinion, as a matter of law because the quarry was not worked. It was not then worked for "the greatest amount of sand, gravel or limestone." To suggest that pumping water and other maintenance defeats a finding of abandonment, in light of the said express purpose of the lease, is, in my opinion, unreasonable.

The only issue, in my view, is whether the acceptance of the December 29, 1984, $5,000 "advance" was a waiver of the abandonment. Did this waive over 10 years of mining inactivity?

Consider the defense of acquiescence or estoppel. The very terms of the lease (a long-term lease) provide the owners an option to terminate because of abandonment. This right is unlimited as to time, and the lease quarterly "advances" shall be borne by the lessee to and including the final date of declared abandonment. Because the $5,000 payments are due to the date of the declaration of abandonment, no right to defeat the termination by estoppel should exist. Because of provisions in the lease giving the owners the option of terminating the lease at any time there is abandonment, even though it may have occurred and continued from years before, this case is different than

*Steven W. Barrick & Associates* (147 Ill. App. 3d at 620, 498 N.E.2d at 742), where the court stated:

"What the lessor may not do, however, is consistently accept rent from a problem tenant without objection, warning, or comment, and then attempt to forfeit the lease based on his prior behavior."

"The acceptance of rent, even after a notice to quit has been given, is not itself a waiver, but merely evidence to be considered in connection with all the circumstances." 24 Ill. L. & Prac. *Landlord and Tenant* §241 (1980), citing *Glad-Nan Corp.*, 29 Ill. App. 2d 363, 173 N.E.2d 521.

If remanded, the only issue on retrial would be, in my opinion, whether the acceptance of the December 1984 payment was a waiver of the termination. In light of the owner's continued insistence on termination after the December 1984 payment, I would determine, in this case, that no waiver took place.